IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2018

## DE'QUON LETRAY BOYD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 287505      Barry A. Steelman, Judge**

_____

### No. E2017-00891-CCA-R3-PC
_____

The petitioner, De'quon Letray Boyd, appeals the denial of his petition for post-conviction relief, which petition challenged the petitioner's 2011 convictions of attempted first degree premeditated murder, premeditated murder, felony murder, two counts of aggravated assault, reckless endangerment, and aggravated criminal trespass. In this appeal, the petitioner argues that he was deprived of the effective assistance of counsel at trial. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

John G. McDougal, Chattanooga, Tennessee, for the appellant, De'quon Letray Boyd.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; William H. Cox, III, District Attorney General; and Kevin Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Hamilton County Criminal Court jury convicted the petitioner of attempted first degree premeditated murder, premeditated murder, felony murder, two counts of aggravated assault, reckless endangerment, and aggravated criminal trespass in relation to the 2006 murder of Casey Woods. On April 3, 2006, Mr. Woods, his fiancee, Darlisa Wynn, and her grandchildren, spent the night at the home of her neighbor, Kysha Henderson so that Ms. Wynn could care for Ms. Henderson's children. *State v. Dequon Letray Boyd and Jemarow Deverius Tillison*, No. E2009-02071-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, Sept. 12, 2011), *perm. app. denied* (Tenn. Jan. 11, 2012). At approximately 3:00 a.m., several armed men broke into the apartment and

began shooting. Mr. Woods and Ms. Wynn were both struck. Ms. Wynn identified the petitioner as one of the shooters. "Officer Adam Emery of the Chattanooga Police Department was finishing a call on a nearby street when he heard a loud succession of gunshots." *Id.*, slip op. at 3. Officer Emery went to the scene, and, after a brief chase, Officer Emery arrested the defendant. Mr. Woods succumbed to his wounds following a two-day stay in the hospital. *Id.*, slip op. at 4.

The petitioner filed a petition for post-conviction relief on April 1, 2013, along with a notice that he had placed his original petition for post-conviction relief with prison authorities for mailing on January 4, 2013, but that the petition had been lost in the mail. As proof of the time of the original filing, the petitioner appended to his pleading a copy of the withdrawals from his inmate trust account that he claimed reflected a withdrawal for postage to mail the petition. The petitioner alleged that he mailed a copy of his original petition to the State on January 4, 2013, and moved the post-conviction court to cause the State "to finish it for proper filing and/or allow" the petitioner to submit a backdated petition as timely. In his petition, the petitioner claimed that he was deprived of the effective assistance of counsel.

At the August 23, 2013 evidentiary hearing, the petitioner testified that he was charged with the offenses in this case when he was "16 going on 17." The petitioner said that he did not believe that his trial counsel represented the petitioner "to his best ability" because of "the money situation." He recalled that he asked trial counsel to call certain witnesses, including Regina Orr, and to investigate "the criminal procedures that the police have to take." As to Ms. Orr's potential testimony, the petitioner said, "I actually don't know what she was going to testify to, but at the same time, she was a witness, so she was supposed to testify and could have . . . shed a whole lot of light on the case."

The petitioner testified that counsel did not visit him "on a regular basis," having visited him between five and 10 times, and did not let him "really know what the case was going for." He claimed that counsel "took advantage" of his age and "mental health status." The petitioner said that he discussed with counsel his right to testify but that counsel had recommended that he not take the stand. The petitioner also said that counsel discussed with him the potential testimony of the State's witnesses as well as the evidence likely to be offered by the State at trial.

The petitioner admitted that he was apprehended near the scene of the home invasion but insisted that the State "never had any hard evidence or nothing to link" him to the crime. He expressed dissatisfaction with the fact that his co-defendant, Jemarow Tillison, was convicted of less serious charges despite that the same evidence was presented as to both men at the joint trial.

The petitioner admitted that counsel correctly informed him as to the appellate process but claimed that after counsel initiated the direct appeal, he did not hear from counsel. He acknowledged, however, that counsel told him which issues would be raised on appeal. The petitioner testified that he wanted counsel to challenge the show up that occurred immediately following the offenses at which Ms. Wynn initially identified him as one of the perpetrators. He stated that police took him back to the scene immediately following his arrest in violation of his constitutional rights.

During cross-examination, the petitioner acknowledged that the first page of his petition for post-conviction relief indicated a filing date of April 1, 2013. He explained that he originally "sent it out" on January 4, 2013. He said that when he telephoned the court clerk's office to inquire about the status of the petition, he learned that it had not been received. At that point, he "re-sent another copy" of the petition. The petitioner identified for the record the notarized copy of the ledger from his inmate trust account, which indicated that the document had been notarized on March 26, 2013.

The State moved to dismiss the petition on grounds that the petitioner had failed to comply with the statute of limitations for filing a petition for post-conviction relief. The post-conviction court did not rule on the motion at that point but directed the State to proceed with cross-examining the petitioner.

The petitioner insisted that he wanted counsel to present Regina Orr as a witness despite that he did not know what her testimony might be. He acknowledged that Ms. Wynn identified him as one of the perpetrators but that no one had identified Mr. Tillison as having been a part of the home invasion. He conceded that testing revealed the presence of gunshot residue on his hands but claimed that the arresting officer had transferred the residue to his hands during the arrest. The petitioner admitted that trial counsel cross-examined the State's ballistics expert about the likelihood that gunshot residue had been transferred to the petitioner's hands.

With regard to his claimed learning disability and mental health issue, the petitioner acknowledged that he had been evaluated before being transferred to criminal court from juvenile court. He did not have another evaluation after his transfer. The petitioner acknowledged that the doctor who performed the evaluation testified at his sentencing hearing.

During redirect examination, the petitioner testified that he initially placed his original petition for post-conviction relief with prison officials for mailing on January 4, 2013. When he received no response, he telephoned the clerk's office to see if they

had received it. He said that someone in the clerk's office told him to resend the petition, so he did. The petition, he said, was prepared with the assistance of another inmate.

Trial counsel testified that he met with the petitioner at the Hamilton County Jail more than 12 times after he was appointed to represent him. Counsel said that "[i]t took extra time to explain things to" the petitioner because the petitioner "was young . . . and did seem to grasp things" more slowly. As a result of the observed delay in the petitioner's understanding, trial counsel engaged the services of a Doctor Solovey to evaluate the petitioner. Counsel testified that "the bottom line" of Doctor Solovey's evaluation was that the petitioner "had slight mental retardation issues but it was not enough to affect his competency to stand trial." Counsel recalled that the petitioner's IQ was in the "[h]igh 70s . . . 79 maybe." At one point, the petitioner's IQ had been measured at 81, and, at another time, it had been measured at 76. Counsel said that Doctor Solovey's conclusions regarding the petitioner's competency match those reached by another evaluator in the juvenile court.

Trial counsel testified that following his appointment, he secured extra funds from the criminal court to hire an investigator, and the investigator spent 84 hours investigating the case. Counsel interviewed the petitioner and his family. Counsel said that he went with the investigator to the scene of the crime and that they "talked to everybody that would talk to" them. Counsel said that the object of the defense was to establish reasonable doubt. Counsel said that he moved to suppress Ms. Wynn's identification of the petitioner, but he did not recall the identification having been in the nature of a crime scene show up. He explained, "I think Ms. Wynn was in the hospital, she was shot, so I don't recall that." Counsel did not challenge the denial of the motion on appeal because he did not believe there was any merit to such a claim.

Counsel testified that he discussed with the petitioner the petitioner's right to testify and that he recommended that the petitioner not take the stand based upon his "experience with talking to [the petitioner] and working with him on the case." In addition, the petitioner "was charged with another shooting and was apprehended" while released on bond in the juvenile court for the charges in this case. After he was incarcerated but before the trial in this case, the petitioner "and another group were accused . . . of attacking another inmate seriously." Counsel went to observe the hearing on the assault charge that arose from the jail attack, "and when [the petitioner] came out, he acted inappropriately. He cussed and talked, interrupted the Court, and it was alarming." Based upon these observations, counsel "just felt it wasn't best for him to testify" because "he would incriminate himself if he did."

Counsel testified that he did not seek suppression of the dash camera video recording because he used it in the petitioner's defense at trial. Counsel explained that

-4-

the video recording shows the entire case as it unfolds from the time the officers hear gunshots to the time they apprehend the offenders. Counsel said that the tape also showed an officer securing the weapon used to kill Mr. Woods right before that same officer went to loosen the petitioner's handcuffs. Counsel utilized the videotape as a means to explain the presence of gunshot residue on the petitioner's hands.

At the conclusion of the proof, the post-conviction court indicated that it would allow the petitioner to produce documentation in support of his claim regarding the statute of limitations. In the order denying post-conviction relief, however, the court indicated that "without the introduction of additional proof, the [S]tate conceded the timeliness of the petition." The post-conviction court then denied relief based upon the merits of the petitioner's claims. The court concluded that the petitioner had failed to present clear and convincing evidence to support any of his claims.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, arguing that his counsel performed deficiently by failing to meet with him and explain the nature of the charges against him and by failing to call witnesses favorable to the defense.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the denial of post-conviction relief. Trial counsel's accredited testimony established that he met with the petitioner no fewer than 12 times prior to trial and that he took extra time to ensure that the petitioner understood the charges against him as well as the theory of the defense. Counsel secured funding for the services of an investigator to assist in the case and a mental health professional to evaluate the petitioner's competency to stand trial. The petitioner suggested the name of only a single potential witness, Regina Orr, but acknowledged that he did not know what testimony Ms. Orr might have offered at his trial. Additionally, the petitioner did not present Ms. Orr as a witness at the evidentiary hearing. Under these circumstances, we cannot speculate what Ms. Orr might have testified to at trial. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.").

Accordingly, we affirm the judgment of the post-conviction court.

_____

JAMES CURWOOD WITT, JR., JUDGE